WIRT ADAMS, STATE REVENUE AGENT, v. STONEWALL COTTON
MILLS.

[43 South. Rep., 65.]

1. STATE REVENUE AGENT. *Chancery court. Jurisdiction. Suit for back
taxes.*

The state revenue agent cannot maintain a suit in equity for the
recovery of back taxes where the charges of fraud upon which
jurisdiction depended are disproved.

2. SAME. *Board of supervisors. Disallowance of assessment. Appeal.*

If the board of supervisors disallow an assessment for back taxes,
made at the instance of the state revenue agent, the proper remedy
of that official is an appeal from the order of the board to the
circuit court.

FROM the chancery court of Clarke county.

HON. JAMES L. McCASKILL, Chancellor.

Adams, state revenue agent, appellant, was complainant in
the court below; Stonewall Cotton Mills, a corporation, the
appellee, was defendant there. From a judgment in defend-
ant's favor, dismissing the bill, complainant appealed to the
supreme court.

The bill was filed originally against the Stonewall Manu-
facturing Company and the present appellee for the collection
of alleged delinquent taxes. It charged that the Stonewall
Manufacturing Company was chartered in 1870 as a corpora-
tion with power to exist for twenty-five years; that from the
date of its charter up to the filing of the bill it had operated
a large cotton factory in Clarke county, its domicile; that
designated property was assessed to it upon its own return
from 1886 to 1894, inclusive, and that like assessments were
made against the appellee, the Stonewall Cotton Mills, for
the years 1895 to 1897, inclusive, and taxes levied thereon
which were unpaid; that the two corporations were the same,

89 Miss.—55

the Stonewall Cotton Mills being the Stonewall Manufacturing Company under another name; that in 1895, when the charter of the manufacturing company expired, the stockholders, with a view of further enjoying the exemptions from taxation previously enjoyed for twenty-five years, changed the name of the corporation to the "Stonewall Cotton Mills," with intent to defraud the state and county of taxes, fraudulently pretending that the cotton mills was a new manufacturing enterprise, and entitled to exemptions from taxation as such; that no conveyance of property was recorded, although the manufacturing company pretends to have transferred its property to the cotton mills; that the taxes due from the Stonewall Manufacturing Company were liens upon the property of that corporation in the hands of the Stonewall Cotton Mills, and, as the two corporations were in fact one, the taxes due from the cotton mills were liens upon the property; that the alleged dissolution of the Stonewall Manufacturing Company by limitation of its charter, in 1895, and the alleged organization of a new corporation by name of the Stonewall Cotton Mills, in the same year, constituted a fraudulent arrangement on the part of the stockholders to defraud the state of the taxes, and the bill prayed for a decree against the corporations for the amount of the state and county taxes. The Stonewall Manufacturing Company made a motion for a dismissal of the bill as to it on the ground that it had ceased to exist more than three years before the filing of the bill, and hence could not be sued, which motion was supported by affidavits, and was sustained and the bill dismissed as to the manufacturing company. The Stonewall Cotton Mills, the appellee, demurred to the bill, and the demurrer was sustained, but upon complainant's appeal to the supreme court the decree was reversed and the cause remanded to the chancery court and appellee required to answer the bill. The case is reported, *Adams, Revenue Agent,* v. *Stonewall Mills,* 80 Miss., 94 (s.c., 31 South. Rep., 544), and the re-

port contains a full statement of the facts alleged in the bill and the grounds of the defendant's demurrer to it.

The answer of the Cotton Mills, appellee, filed when the case was remanded, denied that there was any collusion or pretended transfer between the Manufacturing Company and the appellee, or that the appellee was a continuation of the Company in a reorganized form, and denied its liability for the taxes claimed in the bill; it alleged that the Manufacturing Company was chartered in 1870, and that its charter expired April 22, 1895; that appellee organized April 2, 1895, as a corporation, for a period of fifty years; that after its organization it became the owner of all of the capital stock and property of the Manufacturing Company, acquiring the same before April 22, 1895; that the stockholders in the Manufacturing Company surrendered their stock and received therefor new stock in the Stonewall Cotton Mills for like amounts, the two corporations coexisting for twenty days; being, however, entirely different organizations. The answer admitted that it had assumed the debts of the Stonewall Manufacturing Company, when it took over its property, and was therefore liable for the taxes, if duly assessed and legally due by that company; but insisted that under the exemptions granted to the Stonewall Manufacturing Company, to which it was entitled, there was no liability on the part of either. These exemptions are stated in the opinion of the court.

The answer further stated, as proof of the fair intentions of the appellee touching the payment of all just taxes, that opinions had been secured from the state's attorney-general as to its liability for taxation and as to its rights to exemptions, and the action of the appellee had been based upon such opinions; and the answer, which was under oath, set forth at length and in itemized form its property and assets, and the property and assets of the Stonewall Manufacturing Company at the respective dates when the three exemptions, referred to

in the opinion, were granted, and also the correspondence with the attorney-general and state auditor as to the same.

On the trial the complainant offered in evidence merely the tax records and supervisors' minutes of the county. The only testimony offered was that of the tax assessor who was in office from 1891 to 1900, and of the superintendent of the appellee, who had acted as superintendent and secretary of the Stonewall Manufacturing Company for the time covered by complainant's bill, both being witnesses for appellee. This, together with the exhibits to the answer, comprised the evidence in the case. The court below decided in favor of the defendant and dismissed complainant's bill. The opinion further states the case.

*Fewell & Son,* for appellant.

The first question here is whether the entering of the property on the assessment rolls and the extension of the state and county taxes on the rolls, and the approval of the rolls without any order of the board striking out the items, amounted to an assessment of the property for taxation under the attendant facts and circumstances.

The superintendent of appellee gave in the property as being exempt. It was not his intention to return the property for taxation; nevertheless, the assessor placed the property on the assessement rolls the same as he did other property, and the only fact or circumstances which went to indicate that the property was not assessed for taxation was the writing by the assessor on the rolls (except the rolls for 1890 and 1891), opposite the entries, the words, "Exempt under the act of 1882." Our contention is, that these words had no place on the rolls; that they were not placed there by any person authorized to such end, and that they are to be considered as mere surplusage, not in any way affecting the rolls, or the character or meaning of the proper entries thereon, and that it is a case where the

rule *"utile per inutile non vitiatur,"* applies. This maxim was discussed in the case of *Adams* v. *Bank,* 74 Miss., 307 (s.c., 32 South. Rep., 881). Authorities were there adduced on behalf of the state revenue agent, showing that it was applicable under all sorts of conditions. While it was ruled in that case that the maximum did not apply, yet the reasoning of the court, at least inferentially, would indicate that it does apply in this case. The assessor had no right whatever to determine what property was exempt, nor to make any notation on the rolls indicating what property was exempt; nor had the board of supervisors any right to determine what property was exempt, nor to indicate by any entry on the rolls that any property was exempt, and the entry by the assessor and the approval by the board, with the notation on the rolls, amounted, as to the assessor, to a legal assessment for taxation, and, as to the board, the approval of the assessment applied only to the legal and proper entries on the rolls, and not to any notations other than those which by law belonged on the roll.

We know of no law which gives to the assessor or to the board of supervisors any power to determine what property is exempt. No objection to the rolls containing these entries was made. The board could not have made an order directing the property to be exempt—much less could it provide for an exemption by such notations as were here found or entered upon the rolls. The statutes provide what shall be placed on the roll, and anything placed on the roll by any one at any time, other than that which the law requires to be placed there, amounts to nothing. If the entry of the property on the assessment rolls, and the approval of the rolls with said property on them, and the levy on the rolls as showing the taxable property in the county, amounted in law, as we contend, to a valid assessment, then no act of the auditor or of the board in any settlement could affect the matter or the rights of the state or county.

It was contended by appellee in the lower court that the settlements made between the tax collector and the auditor and the board of supervisors, in which settlements credit was given the collector for the taxes levied on these items, operated to confirm the exemptions. If the ingenuity of counsel can fit these allowances to these items, we say it was not in the power of the auditor or the board to give any such credits and that they were false credits which may be recovered back. But if the court should hold that the things that were done did not amount to a legal and binding assessment for taxation under the facts stated, and that we may "go behind the returns" and inquire into the question whether the appellee's property was exempt from taxation as claimed, then we insist:

Second—As to the exemption of the $75,000 claimed and enjoyed from the year 1884 to the end of 1893, we contend that the extensions and additions put upon the property did not entitle the appellee to exemption under the act of 1882; for an examination of the affidavit made for the $75,000, and of the itemized account of the items thereof, will show that a great many items placed therein are not to be considered as embraced in the act of 1882. Obviously the act did not intend to place mere renewals or repairs to the old machinery on any exemption list. Further, it will be seen that these additions or enlargements were not made at any one time, nor even about the same time; but they were made from time to time during several years. Did the act mean that the alleged extensions or additions made through different years could finally, after the lapse of several years, be added together so as to make them amount to $50,000, and the aggregate be then claimed as exempt? We insist that this act meant that such extensions or additions should be made at practically the same time, and this we think is clear, even under ordinary rules of construction—the more so under the strict rules applicable to questions of exemption from taxation. The same may be said of

the appellee claiming the exemption of $73,000, which we discuss further on.   As to the exemption claimed under the constitution and laws passed since the adoption of the consti-. tution—

Third—Can the building and machinery proven to have been erected and installed after the adoption of the constitution of 1890 be considered as embraced in the constitutional ordinance as a "factory thereafter established?"   It will be borne in mind that all cotton factories that have ever been erected in Mississippi have enjoyed long exemptions—either under the act of 1872 or subsequent enactment.   As to exemptions on all these factories, the argument to the legislature was that the establishing of cotton factories should be encouraged and aided; that this aid was necessary to induce their establishment, to put them on their feet.   It never was the intention, except as expressed by the act of 1882, that additions or extensions of factories which had enjoyed these exemptions should be exempt; it was always urged as a reason for aiding these factories that they would not only be thereby induced to come into the state, or be erected here, and thus benefit the people through increase of population, and the giving of employment to certain classes which could not now find employment, and the increase of values, but it was also persistently urged that eventually these properties would be added to the assessments and thus the burden of taxation be lightened. In the light of the statutory history of this subject, what was meant by the constitutional ordinance and subsequent acts of the legislature by the use of the words "hereafter established?"   Observe that there are no words such as "enlargements," or "extensions," or "betterments," or "additions," in the ordinance.   This factory was already established, and had been established and had enjoyed exemptions for many years.   To "establish" a cotton factory is to do much more than erect suitable buildings and install suitable machinery.

We insist that the new building and machinery should not be taken as the establishment of a new factory, either according to the letter or spirit of the ordinance and statutes.

But it is contended that the auditor allowed the exemptions. As to this, we have to say: There was no provision under the exemption ordinance for the establishment of any tribunal or body to determine whether the property was exempt. The exemption ordinance was self-acting; it required no statute to put it in force. In this connection we call the court's attention to section 182 of the constitution of 1890. It will be noted in this section that authority is given the legislature to grant exemptions from taxation in the encouragement of manufactures and other *new* enterprises of public utility extending for a period not exceeding *five* years—the time of such exemptions to commence from date of charter, if to a corporation, and if to an individual enterprise, then from the commencement of work—and that the legislature shall prescribe the mode and manner in which the right to such exemptions shall be determined. The power of the legislature to exempt property from taxation is limited by the provisions of section 182. We insist that this provision forbids the granting of exemptions for longer periods than five years, and that any attempt of the legislature to grant exemptions for longer periods than five years is abortive, and that Code 1892, § 3744 (*v*), and the act of 1896 are therefore void—void not only for the ten years, but altogether void from the beginning. But if section 3744 shall be held applicable and valid, then we insist that the auditor and attorney-general had no jurisdiction, and that the letters of the auditor amount to nothing, the matter being as is insisted, *coram non judice,* because the buildings and machinery erected by appellee were not considered as a factory established after the adoption of the constitution.

We think it clear, and again insist, that any act of the legislature giving exemption for more than five years is violation

of section 182 of the constitution, and wholly void; not good even for five years, and no action of the auditor and the attorney-general licensing exemption for any greater number of years is good. It might as well be contended that when a justice of the peace takes jurisdiction of a debt of, say, $400, and renders a judgment for that amount, that such judgment is good for $200—the limit of his jurisdiction—as to contend that the action of the auditor and attorney-general in undertaking to authorize an exemption for ten years is good to the extent of five years. The whole proceeding was utterly void and conferred no right.

The main part of section 3744 (v), i. e., the granting of exemptions for more than five years (the clause thereof establishing a tribunal to decide the question of exemption vel non), being a part of the same scheme and dependent on the main part, the tribunal part goes down with the main part, the same failing for being unconstitutional. The two parts are inseparable. See Fant v. Gibbs, 54 Miss., 411. Again,

Fourth—The exemption act of 1882 was repealed by the constitution, except as to corporations entitled to exemption at the date of the adoption of the constitution of 1890. For it was only by virtue of section 180 of the constitution of 1890 that exemption then in force continued to exist. Adams v. Tombigbee Mills, 78 Miss., 676 (s.c., 29 South. Rep., 470). And the exemptions then in force were only in favor of the corporations then entitled to the same. Now, if any exemption on the property sought here to be taxed was in force in 1890, it was in favor of the Stonewall Manufacturing Company, the corporation then owning said property and then enjoying the exemption. The charter of that company expired by its own limitation in April, 1895, and a new corporation then became the owner of the property. The exemption did not pass to the new company. This has been definitely settled. Railroad Company v. Wirt Adams, State Revenue Agent, 77 Miss., 194 (s.c.,

24 South. Rep., 200; s.c., 28 South. Rep., 956). Now, in the case at bar, there is no question that a new corporation was formed that took over the property—the old company's charter having expired. Here there was no provision or pretended provision in the charter of the new company that it should have any rights of the old company or enjoy any exemption; and we insist that the doctrine above asserted in *Railroad Co.* v. *Adams, supra,* applies with full force to this case, and that it is clear that only the old company was entitled to enjoy the exemption as provided by section 180 of the constitution of 1890. The old company died in April, 1895; *then,* if not before, the exemption stood repealed, as well by the constitutional provision as by Code 1892, § 3744. The manifest result is that the appellee, which has owned this property since 1895, has never been entitled to any exemption under the act of 1882; and yet it has enjoyed exemption on the $73,000 for the years 1895, 1896 and 1897, to wit, three years after the appellant took over the property, while the old company, the Stonewall Manufacturing Company, enjoyed exemption for ten years—ending in 1893—on the $75,000. We claim that the taxes on the $73,000 assessed to the cotton mills for the years 1895, 1896 and 1897, are due by the appellee, because of their assessment to the cotton mill company whereby it became debtor to the state and county; and that the assessment against the Stonewall Manufacturing Company of the taxes on the assessments of the $75,000 for the years 1886, 1887, 1888, 1889, 1890, 1891, 1892 and 1893, are due by and collectible against appellee by its assumption of all the debts of the old company, the Stonewall Manufacturing Company, insisting that the taxes levied on the $75,000 for said years claimed as exempt, constituted a debt due by the old company.

The purpose of the acts hereinabove mentioned was to encourage the introduction of new factories. The parts referring to extensions, etc., meant "to enlarge"—that is—increase

the number of employes.   The word "betterment" or "improvement" is not used; it must have been *"extensions"* or *"additions"* to the factory.   It is no hardship to compel this company to pay these back taxes on property which was clearly not exempt; indeed, it has been a benefit to it to have payment deferred for so many years, and thus have the use of the money without interest, which should have been paid into the treasury and assisted in carrying the burden of government.   We invoke the rule generally, if not unanimously, adopted, as expounded by the supreme court of the United States in *Yazoo & Mississippi R. R. Co.* v. *Thomas,* 132 U. S., 174, in the following clear-cut language:   "Exemptions from taxation are regarded as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the. language used, construed *strictissimi juris."*   Which language is quoted and its principle fully recognized by this court in *Railroad Company* v. *Adams,* 77 Miss., 262 (s.c., 24 South. Rep., 200; s.c., 28 South. Rep., 956).

Summarizing, we contend that the assessment of this property amounted in law to an assessment for taxation, and the words written on the rolls, no matter when they were written, are mere surplusage or redundancy, not having any place, and having no place, having no meaning, and not in any wise affecting the assessment (*utile per inutile, etc.*), and that the levies made on these items made the Stonewall Manufacturing Company and the appellee debtors to the state and county for the amounts thereof, and the appellee a debtor to the state and county for the levies on the property as its property, and, under its assumption of all the debts of the Stonewall Manufacturing Company, debtor for all the assessments and levies made against that company.   That the appellee never was entitled to any exemption on the $73,000, because it—the appellee—was not embraced by section 180 of the constitution, and that the ex-

emption claimed on the two items, $75,000 and $73,000, was not allowable under the act of 1882, and that the exemption enjoyed by appellee for the year 1897 on the $195,000 claim was not allowable under the constitution, or under the act of 1,896, or any other act. And we respectfully demand of this court a decree on all of said back taxes—with a lien on appellee's property described in the pleadings for such back taxes.

*John L. Buckley,* and *S. A. Witherspoon,* for appellee.

We insist that the decree dismissing the bill should be affirmed, for the following reasons:

1. There is no equity in the case, and the chancery court had no jurisdiction to determine the questions presented in the case. When this cause was before this court the first time, we then insisted that there was no equity in the face of the bill. Our contention was not sustained by this court. In the last sentence of the opinion reversing the decree of the chancellor, *Adams* v. *Stonewall Mills,* 80 Miss., 115 (s.o., 31 South. Rep., 544), this court used this language: "But if the facts thus alleged are true, it must be obvious that a plain case for equity jurisdiction on more grounds that one has been shown, and no amount of subtle and refined reasoning can obscure the right of the complainant to answer on the facts." This concluding sentence of the opinion of this court followed a statement of facts which the court decided constituted a case in equity jurisdiction, and we now assert that not one of the facts alleged in the bill, and enumerated by this court in its opinion as constituting the equity of the defendant, has been proven. The supposed equity on which the decree of the chancellor was reversed does not appear in the record now before the court to exist, and, therefore, the decree of the chancellor should be affirmed.

The first one of the facts enumerated in the opinion of the court is that the bill was not an effort to back-assess any part of the property of the corporations, but simply to compel them

to pay their taxes according to the sworn statements that the corporations themselves returned. In regard to this allegation, the bill does charge that the assessments on which the taxes were claimed had been returned by the defendants on sworn assessments made by the corporations themselves. This allegation of the bill is positively denied in the answer, and no proof was introduced by the appellant on this point; nor, indeed, was any proof introduced by the appellant on any point. He took no depositions and offered no evidence in the case. All the evidence in this case was offered by the appellee, and the case as it now stands before this court must be determined on proof of the appellee alone. Not only did the appellant fail to introduce any evidence to show that the corporations had returned sworn assessments for the amounts on which taxes are claimed in the bill, but, on the contrary, it is affirmatively shown that this allegation of the bill is untrue. It is proven by the deposition of S. A. Carr, the tax assessor, and by the deposition of T. L. Wainwright, appellee's superintendent, that all the taxable property of the corporations was given in for assessment on sworn returns, using the regular blank forms provided by the statute; but that as to the amounts of capital invested in manufacturing on which the taxes sued for are claimed, not one of these amounts was included in said sworn assessments. On the other hand, the corporations each year, at the same time the sworn returns of the taxable · property were given in, also gave to the tax assessor a written statement of the amount of capital invested in manufacturing which was exempt; that these statements showed that from the years 1886 to 1893, inclusive, the Stonewall Manufacturing Company was entitled to an exemption of $75,000 on account of an extension made to its factory in 1883, under the act of 1882; and that during the years 1890 to 1897, inclusive, it was entitled to an exemption of approximately $73,000 on account of a second extension and addition to its factory, constructed

under the same act of 1882; and that for the year 1897 the appellee was entitled to an exemption of $195,000 on account of an entirely new factory established in the year 1896, by virtue of the provisions of the constitutional ordinance.

The second fact recited in the opinion of the court as constituting the equity of the appellant as alleged in the bill, is that the Stonewall Manufacturing Company and the appellee had never paid any taxes upon their property, but had enjoyed exemptions from taxation from the establishment of the factory in 1870 to the present time. This allegation is denied by the answer, which positively avers that the appellee and the Stonewall Manufacturing Company had every year given in to the tax assessor each the full amount of its personal and real property, and that the taxes thereon had been every year paid. No proof whatever was introduced by the appellant on this point, and Mr. Wainwright, the former secretary of the Stonewall Manufacturing Company, on behalf of the appellee, testified that the taxes amounted to $11,000 for the ten years from 1886 to 1897, inclusive, and that all of these taxes had been paid. In addition to Wainwright's testimony, the appellee introduced the original tax receipts of the tax collector for such years, and these tax receipts show that the taxes of the corporations range from $700 to $1,500 per year, and that the average of the taxes paid during such period was over $1,000 per year.

The third fact recited in the opinion of the court as constituting the equity of the appellant is that the taxes due from the Stonewall Manufacturing Company are liens upon the property of that corporation in the possession of the Stonewall Cotton Mills, and that said property still owes such taxes; that the corporation is now known as the Stonewall Cotton Mills. This allegation of the bill is also positively denied by the answer, and no proof is introduced to sustain the bill. On the other hand, the proof in the record abundantly shows that all the property, both personal and real, of the Stonewall Manu-

facturing Company, and of the Stonewall Cotton Mills, was assessed for taxes each year, and that said taxes so assessed have been fully paid. It is averred in the bill that the machinery and all factory buildings on this land were a part of the land. If, therefore, this real estate was each year assessed for taxes at a valuation ranging from $17,000 to $20,000, and if the taxes on the real estate were, as was shown in evidence, paid each year, then there cannot be any lien for taxes on this property. The assessment of the property for taxation and the payment of all taxes assessed thereon free it from all liens. We, therefore, submit to the court that the lien claimed in the bill as existing on the real estate described therein had been assessed for taxation and the taxes fully paid. Such lien could not exist on such real estate after payment of taxes thereon as regards the amount of capital invested in manufacturing and as regards the amount of all personal property not otherwise mentioned, when the taxpayer has settled his taxes on those very items. So far, therefore, as the tax lien, claimed in the bill and considered by this court as constituting the equity of the bill, is concerned, we confidently submit that the facts in the record, which require no sort of reasoning, conclusively show that there is no lien, and that the equity of the bill fails, so far as this may constitute its basis.

The fourth fact, enumerated in the above-mentioned opinion of this court, as constituting the equity of the complainant, is that the bill charges that a fraudulent and collusive arrangement had been entered into between the two corporations with the view of defrauding the public revenue out of an amount of taxes aggregating $14,000, it being charged that the same persons that owned the capital stock of the Stonewall Manufacturing Company also owned the capital stock of the Stonewall Cotton Mills, and that a part of this scheme was that there should be a change of name from the Stonewall Manufacturing Company to the Stonewall Cotton Mills, the purpose being

to claim that the Stonewall Cotton Mills was a factory established after the constitution of 1890 went into effect, whereas, in truth and in fact, the property of the Stonewall Manufacturing Company was the property of the Stonewall Cotton Mills. This charge in the bill is positively denied by the answer, and the appellant introduced no evidence whatever to sustain the charge. On the other hand, the testimony of Mr. Wainwright, appellee's superintendent, who was the only witness introduced, shows conclusively that the charge is untrue. Mr. Wainwright says that the Stonewall Cotton Mills was chartered the 13th day of October, 1892, and was never organized until the 2d day of April, 1895. The charter of the Stonewall Manufacturing Company expired by limitation of law on the 20th day of April, 1895, so that the two corporations coexisted as such for only twenty days, and if any collusive or fraudulent arrangement was made between them, it must have been made between the 2d of April and the 22d of April, 1895. He says that the charter of the Stonewall Cotton Mills was procured because it was known that the charter of the Stonewall Manufacturing Company would expire on the 22d of April, 1895, and that unless the property was taken over by some corporation, it would by operation of law become vested in the stockholders, who would thereafter have to liquidate or conduct the business as partners. This was the reason for the organization of the Stonewall Cotton Mills. He swears positively that the exemption of the property from taxation had nothing whatever to do with the organization of the Stonewall Cotton Mills. The two exemptions of $75,000 and $73,000 had been procured, and one of the two had expired, and the other had partially expired, when the Stonewall Cotton Mills was organized. And as to the exemption of $195,000 under the constitutional ordinance of 1890, that was never conceived, thought of, or mentioned, until long after the Stonewall Manufacturing Company had ceased to exist, and the Stone-

wall Cotton Mills had become the owner of the property. This
ownership was effected by the Stonewall Cotton Mills purchas-
ing all the stock of the Stonewall Manufacturing Company,
and, therefore, under the statute, when the Stonewall Manu-
facturing Company ceased to exist by the expiration of its
charter, all of its property became vested in the Stonewall
Cotton Mills as the sole owner of its stock. It was done by
operation of law, and not by any sort of agreement, either
collusive and fraudulent or otherwise. The capital stock of the
Stonewall Manufacturing Company was $200,000, and all
of its capital had been invested in the factory that existed at
the time of its dissolution. After its dissolution and after its
property had gone into the hands of the appellee, an additional
sum of $200,000 was subscribed by the old stockholders and
others, to construct a new factory in 1896. With this money
an entirely new factory in all parts was built, constructed on
the same land, it is true, but complete and distinct and separate
as a factory. It was not connected physically in any way with
the old factory, and it was operated as a separate and distinct
power plant by wholly disconnected machinery, and it was as
separate and distinct from the old factory as if it had been
located in a different county. Before this factory was built
the appellee inquired of the attorney-general of the state if it
would be exempt from taxation under the ordinance of the
constitutional convention, and was informed that it would
be. The assurance of this exemption induced the stockholders
to subscribe and pay for this additional amount of $200,000,
but all this was done, as well as conceived, long after the Stone-
wall Manufacturing Company had ceased to exist, and, there-
fore, the charge in the bill that there was collusive arrange-
ments between the two corporations to secure this exemption
is utterly unfounded. Mr. Wainwright further says that no
change in the name of the Stonewall Manufacturing Company
was ever suggested or thought of. It continued to go by its

same old name from the time it was first organized, in 1870, until the day of its death, on the 22d of April, 1895.    When the charter of the Stonewall Cotton Mills was applied for the name it now bears was adopted as being preferable to that of the former corporation, because the name of Stonewall Manufacturing Company did not indicate what sort of goods it manufactured, and it was decided to have the new corporation bear a name which would indicate the purpose of its existence and the nature of its business.

The fifth fact enumerated by the court as constituting the equity of the appellant is that an essential feature of such transfer was an assumption by the Stonewall Cotton Mills of these particular taxes due on the property of the Stonewall Manufacturing Company.    This allegation is denied positively in the answer, and there is no proof to sustain it.    It is true that the Stonewall Cotton Mills assumed all the debts of the Stonewall Manufacturing Company, but it is not true that it assumed these particular taxes, because both the Stonewall Cotton Mills and the Stonewall Manufacturing Company have always claimed, as the record conclusively shows, that the taxes claimed in the bill were not due, and both corporations also denied their existence.

We have now shown that all the facts enumerated by this court in its opinion as constituting the equity of the complainant are denied by the answer; that no testimony was introduced by the appellant to sustain the charges, and that in each and every case the appellee has affirmatively and conclusively proven that the pretended facts were not true.    If a case in equity jurisdiction is not presented by the facts which this court has said would constitute such a case, then we submit that there is no case in equity jurisdiction, and, therefore, the bill was properly dismissed, and the decree should be affirmed.

It will be noticed that in the brief of the learned counsel for appellant, they make no effort to show that any of the facts

exist which this court has decided constitute the grounds of equity jurisdiction. The truth is, that they were all so clearly disproven by the testimony that no ground was left upon which the learned counsel could argue that the facts necessary for equity do exist. Counsel merely argue the case as if it were an act of assumpsit in the circuit court.

If all the contentions which counsel make in their brief were conceded, still there would be no case for a court of chancery. Their contention is that the entry of the amounts which the corporations claimed as exempt upon the assessment rolls of the county, amounts to an assessment of those amounts for taxation, and that being legally assessed against the corporations, they owe the taxes, 'and are liable to pay the same. They then contend that if the court should not regard the assessments as legal and binding, still, for numerous reasons so stated, the claims for exemption were illegal and void, and that, therefore, the corporations are liable for taxes. If all this was conceded, it would still follow that there was no case here for a chancery court to decide. It would still be true that the appellant could have prosecuted his suit in the circuit' court to recover judgment for the taxes which he claims as being legally assessed against the appellee and the Stonewall Manufacturing Company. We therefore submit that the decree was proper and should be affirmed, because there is no equity in the case that would authorize a court of chancery to take jurisdiction of it.

2. In the second place, we contend that the decree of the court below should be affirmed because the proof shows that there never was any assessment of the taxes claimed against either the Stonewall Manufacturing Company or the appellee. The answer positively denies that any such assessments as alleged in the bill were ever made, and no proof is introduced by the appellant to establish the assessments. The appellee has introduced certified copies of the personal rolls for the years

1886 to 1897, inclusive.   These copies are marked Exhibit 1 to the answer, and by an examination of them, it appears that for the year 1886 the Stonewall Manufacturing Company was assessed with the sum of $3,500 as the amount of capital employed in manufacturing or merchandising.   On a separate list, and as a distinct, separate item, the name of the Stonewall Manufacturing Company is repeated in the column of names, and under this sum of $3,500 is put down the sum of $75,000, and opposite this, on the same line, appear the words, "Exempt. See acts of 1882."   In the same way are the assessments made for each of the other years, excepting the years 1890 and 1891, where the words "Exempt," etc., are omitted.

For the year 1892 the Stonewall Manufacturing Company is assessed with $7,000 as the amount of capital invested in merchandising or manufacturing, and also with $148,266.13, as exempt under the acts of 1882.   This latter amount included the two exemptions of $75,000 and $73,000.

For the year 1894 the exemption is made in the same way, except that the exemption of $75,000 having expired, the company is assessed with $7,000 as the amount of capital invested in merchandising and manufacturing; and in the column of the amount of all other personal property not otherwise mentioned, is put down the exemption of $73,000 as exempt under the act of 1882.

The assessments for the years 1895 and 1896 are made in the same way as 1894.

The assessment for 1897 shows that the Stonewall Manufacturing Company was assessed with $55,000 as the amount of all other personal property not otherwise mentioned, and on the line under this, a memorandum is made of approximately $268,000, claimed by the Stonewall Manufacturing Company, this amount being put in the same column as the $55,000.   The tax assessor, S. A. Carr, was asked to explain why the name of the Stonewall Manufacturing Company was put down in

the column of names on the assessment roll twice, and why the amount of capital invested in manufacturing and merchandising, in some instances, and the amount of all personal property not otherwise mentioned, in other instances, was written out on one line, while the amounts of $73,000 and $75,000 were entered on a different line from the other amounts. He explained that this was done because the first amount entered was put there as the amount for which the company was to be taxed, and the other amounts were put there as a memorandum of the exemptions allowed. With these notations on the assessment roll, the same was approved by the board of supervisors, and it is perfectly clear and manifest that in approving these rolls the board intended, as the tax assessor intended, that the first amounts entered against the Stonewall Manufacturing Company were the amounts for which it should be taxed, and the second amounts were mere memoranda of its exemptions.

If the assessor and the boards had intended that the entries of $75,000 and the $73,000 were made as amounts on which the company was to pay taxes, then it is utterly inexplicable why these amounts were not added to the other amounts in the same column, and the sum of the two entered as one amount, and it is also utterly inexplicable why the tax assessor should have entered upon the roll and the board should not have erased the words indicating that the $75,000 and the $73,000 were exempt.

The approval of the rolls by the board is a judgment, and the meaning of that judgment, like the meaning of any other judgment, is to be determined from the words used. The intention of the officers is to be gathered from the language used to express that intention, and it is impossible to take this language and reason out any other conclusion except that the officers did not mean to assess these amounts for taxation, but merely meant to enter upon the rolls the amount of the exemp-

tions. If that was the intention of the assessor and the boards, then there is no assessment.

In the case of *Redmond* v. *Banks,* 60 Miss., 293, the land of Y. W. Redmond was listed by the tax assessor of Holmes county on the assessment roll, but instead of putting the name of Redmond in the column for the names of owners, the assessor wrote the words, "The State." The land did not belong to the state. It was liable for taxes, and no taxes on it had ever been paid, and yet the court held in that case that the approval of the roll with the words "The State" written in the column for the names of owners, indicated that the land was, in the contemplation of the board and the assessor, state land, and, therefore, exempt from taxation, and that consequently the assessment roll approved by the board was a command to the tax collector not to collect any taxes upon it, and hence a sale of the land for taxes was void.

The case now before the court is much stronger than the Redmond case. In that case it was urged that the words "The State" were written in the column for the names of the owners by mistake, and that under the statute it was immaterial whether the name of the proper owner was placed on the roll or not. Here no such contention can be made. The assessor and the board regarded the lands as exempt, and entered upon the assessment roll itself words to express that intention. The property was, therefore, never assessed for taxation, and there being no assessment, no taxes are due, and the bill was properly dismissed.

3. Our third proposition is that the taxes sued for cannot be recovered, because the pretended assessment was not made in accordance with the law. The statute provides that corporations shall be taxed on the market value of the capital stock. There is no provision of law by which a corporation can be assessed with the amount of capital invested in merchandising, or with the amount of all personal property not otherwise men-

tioned.   It must be assessed with the market value of its capital stock, which embraces not only the value of its real and personal property, but its franchises, its non-taxable property, and all other constituent elements of the market value.    The revenue agent and the tax assessor of Clarke county both knew that this was the law, and that if the Stonewall Manufacturing Company and the appellee were liable for any taxes at all, such liability must be based on an assessment of its capital stock. Accordingly, on the 12th day of July, 1898, before the institution of this suit, the sheriff and tax collector of Clarke county, Mississippi, made an assessment against the Stonewall Manufacturing Company for the years 1886 to 1895, inclusive, of its capital stock at a valuation of $169,000 for the years 1886 to 1889, inclusive, and a valuation of $200,000 for the years 1890 to 1895, inclusive, and on the same day the appellee was assessed with the value of its capital stock for the years 1896 and 1897 at a valuation of $400,000.    The revenue agent being unable to induce the board of supervisors of Clarke county to assess the corporations with the market value of their capital stock, then instituted this suit, and took the position that the entry of the amount of the exemptions upon the assessment rolls was a valid assessment.

In the case of *Simmons v. State*, 70 Miss., 485 (s.c., 12 South. Rep., 477), it is held that the proper way to assess a corporation is to assess the market value of its capital stock.    This was so, although the charter of the Wesson Mills, whose stock it was, in that case, proposed to assess, provided that it should be assessed on the value of its real and personal property, and in the same manner and not otherwise than natural persons were assessed.    Notwithstanding this plain provision of the charter of that corporation, the court held that it was liable to be assessed upon the market value of its capital stock, and this was done, although it had paid taxes upon the value of its property.

It is true that in the case of *State* v. *Simmons, supra,* it was

held that the assessment of the company's property and the payment of taxes thereon entitled it to have the amount of the valuation of its property so deducted from the market value of its capital stock; but we insist that that was by reason of the fact that the charter of the company provided for the assessment of its real and personal property in the same manner that the property of natural persons are assessed.

In this case the charter of the corporations involved does not so provide, and there is absolutely no law by which either one of them can be assessed with the amount of capital invested in manufacturing, or the amount of all personal property not otherwise mentioned. And surely it cannot be done, and such assessments amount to nothing in the face of the fact that the proceeding was instituted before the board of supervisors to assess the capital stock, and said assessment was disapproved and disallowed. If the board was wrong in this action, then the revenue agent should have applied to the circuit court in the way pointed out by the statute, and had the wrong righted, but he cannot, in the face of that adjudication, maintain a suit to recover taxes based on the amount of capital invested in manufacturing and on property not otherwise mentioned.

4. Our fourth proposition is that the decree below should be affirmed, because the property sought to be taxed is exempt by law from taxation. While the liability to taxation of the property would not alone entitle the state to recover taxes, and while, as pointed out by our last proposition, a valid legal assessment is an absolute condition precedent to the recovery of taxes, yet the reverse of this proposition is not true. There must be an assessment made in due form and free from all objections, but if the property is exempt by law, the assessment cannot make it liable, and avails the appellant nothing. This was expressly held in the case of *City of Meridian* v. *Phillips,* 65 Miss., 364 (s.c., 4 South. Rep., 119). In that case the property of the city of Meridian had been duly assessed for

taxation and sold by the tax collector, and bought in by Phillips. It was insisted that the approval of the assessment rolls concluded the city of Meridian and made the tax sale valid, but the court held that the judgment of the board of supervisors in approving the assessment roll did not have the effect to repeal the law, or bar or preclude the owner from asserting his title whenever he chose to do so. It was declared, in the opinion in that case, that the owner of property exempt by law from taxation may justly assume that it will not be assessed or sold for taxes, and that it is not necessary for him to object to the action of the assessor or the board of supervisors, in placing it on the assessment rolls as liable to taxation, in order to preserve his rights.

There are three items of property on which the appellant seeks to recover taxes, and we call the attention of the court to the facts with reference to the exemption of these in their order.

First, we assert that the $75,000 claimed to have been assessed for the years 1886 to 1893, inclusive, were exempt under the act of 1882. Laws of 1882, page 84. That act provides that to encourage the introduction of factories in this state, the machinery, the manufactured goods, the raw material and buildings, and the ground on which the factory is situated, shall be exempt from taxation for a period of ten years from the time such factory is completed and in operation.

The second section of the act provides that all of the terms of section 1 shall apply to such extensions of existing factories, whenever such extension or addition shall cost not less than $50,000, and the cost of such extension shall be sworn to before any magistrate and filed with the auditor of public accounts.

Section 3 provides that during such time as the machinery necessary for the completion and erection of such factory is being received and put in position, together with all necessary

building materials, the same shall be exempt from taxation in like manner as described in the first section of the act.

Mr. Wainwright testifies that in the year 1883 the Stonewall Manufacturing Company constructed an extension and addition to its then existing factory, and that the cost of said addition and extension was $75,000. He says that he made an affidavit before a justice of the peace as to the construction and cost of said extension and addition, and that he filed said affidavit with the auditor of public accounts. He kept a copy of the affidavit, which he filed as an exhibit to the answer. The original of the affidavit was sent to the auditor of public accounts by the Stonewall Manufacturing Company in a letter, of which it retained a letter-press copy. This letter-press copy was also filed as an exhibit to the deposition of Mr. Wainwright.

The second item on which the bill claims to recover taxes of the appellee is an item of $73,000. This, we claim, was exempt under the same act that gave us the exemption of the $75,000. Mr. Wainwright testifies that in the year 1889 an additional extension and addition to the factory was made, and that it cost this sum. He says that in compliance with the act of 1882 he made an affidavit before a justice of the peace, and filed the same with the auditor of public accounts, showing that the cost of the addition or extension was $73,266.13. He reserved a copy of the affidavit, which is made an exhibit to the answer, and was introduced in evidence, and will be found on page 88 of the record. The original affidavit was enclosed in a registered letter, dated January 4, 1890, to the state auditor, and a letter-press copy of this letter was made part of the deposition of Mr. Wainwright, and marked Exhibit A3. It is found on page 189 of the record. Attached to the affidavit filed with the auditor was a statement of the items constituting the cost of this extension. The affidavit was dated January 4,

1890, and, of course, this was the date of the completion of the extension.

It is contended by counsel that no factory is entitled, under the act of 1882, to an exemption for more than one extension or addition to its factory, and that when it has enjoyed an exemption for one addition or extension, it cannot secure another under that act. We do not so construe the act of 1882. The evident purpose of that act was to encourage not only the construction of new cotton factories in the state, but to encourage the investment of capital in additions and extensions to already existing factories. The purpose of it was not to favor any one corporation or person, but to secure to the state the benefit of these extensions and additions. It was, therefore, immaterial, according to the spirit, sense and object of this statute, whether the Stonewall Manufacturing Company had ever made an extension and addition to its factory or not. If, in 1889, it did make an addition and extension to its factory, costing over $50,000, it came within the purview and scope of the act, and was entitled to the exemption.

But it is further contended by counsel for appellant that even if the exemption of $73,000 was secured by the Stonewall Manufacturing Company on January 4, 1890, yet that exemption expired and ceased to exist on April 22, 1895, when the company ceased to exist by limitation of its charter. Their contention on this point is that the Stonewall Cotton Mills did not succeed to the right of this exemption when it became the owner of the factory on April 22, 1895. The mistake of counsel in this regard grows out of the misconstruction of the decision of this court in the case of *Adams* v. *The Railroad Company,* 81 Miss., 90 (s.c., 32 South. Rep., 937), wherein it was held that an exemption granted on the charter of a railroad company did not pass to a new railroad corporation into which the exempt railroad company had been consolidated with an-

other company.   That decision was manifestly correct, but it has no sort of application to this case.

The third item of property on which the bill claims to recover taxes is the sum of $195,000 expended in the latter part of 1896 in the erection and construction of an entirely new factory.   This factory, as shown by the testimony of Mr. Wainwright, was a new factory in every sense of the word. It was in an entirely different building, seventy-five feet from the buildings of the old factory at the nearest point, and was operated by an entirely different power plant.   It made an entirely different line of goods, and neither factory was capable of manufacturing the sort of goods which was made in the other.   It had no physical connection with the old factory, except that the same electrical machinery lighted both factories.   It certainly cannot be successfully contended, however, that this made them one and the same factory.   If this were true, then every factory in the city of Meridian is one and the same, because they are all lighted by the same electrical plant.

But it is contended by counsel that under the constitutional ordinance, which applies to factories hereafter established, the Stonewall Cotton Mills could not establish a new factory so as to become entitled to the exemption, because it already owned and operated another factory.   We positively deny that this is the proper construction of that ordinance.   The policy of the ordinance was to induce capital to invest in the construction of new factories, and it was utterly immaterial whether the persons who built new factories owned others or not, and it was utterly immaterial, according to the spirit and object of this ordinance, how close together the old and new factories might be.

Not only is this new factory exempted by the ordinance of the constitutional convention, but it is exempt under the acts of 1886, which are copied in the brief of counsel for the ap-

pellant.   The appellee conformed to the requirements of this act and presented its claim for exemption to the auditor and attorney-general, who determined in writing that the appellee was entitled to the exemption, and we submit that this settles the proposition.

Argued orally by *John W. Fewell,* for appellant, and by *S. A. Witherspoon,* and *J. L. Buckley,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

This case was once before in this court, and is reported in 80 Miss., 94 (s.c., 31 South. Rep., 544). It was then here on demurrer, and the demurrer was overruled and the cause remanded for answer.   We set out in the opinion, the grounds averred in the bill at that time constituting the equities of the case.   We may group those grounds as follows, according to the charges of the bill:   (1) That the taxes due from the Stonewall Manufacturing Company were liens charged upon the property of that corporation in the possession of the Stonewall Cotton Mills; (2) that the taxes due from the Stonewall Cotton Mills were liens upon this property; (3) that there had been a fraudulent and collusive arrangement entered into between the corporations with the view of defrauding the public revenue out of about $14,000 in taxes.   One of the elements of the fraud alleged was that the name of the Stonewall Manufacturing Company was changed to Stonewall Cotton Mills, in order to enable the Stonewall Cotton Mills to claim the exemption from taxation as a factory established after the constitution of 1890 went into effect; it being futher charged in the bill that the same persons owned the capital stock of both corporations, and that the property of one was the property of the other, the stockholders of one were the stockholders of the other, and that both had been under the continuous management of the same superintendent, and that the Stonewall Cotton Mills had assumed the payment of all these taxes as a

debt due the state and county. The bill averred specifically that the amounts which the bill claimed were not exempt from taxation, had been duly assessed against both these corporations; and, finally, the bill charged that no taxes of any kind had ever been paid by either of these corporations. We held, on demurrer, which admitted all these allegations to be true, that the respondents must answer. The respondents did answer below, fully and completely.

We summarize very briefly what the testimony shows with respect to the jurisdiction of the chancery court over this cause: As to whether the amounts of $75,000, $73,000, and $195,000, claimed to be exempt, were ever, as alleged in the bill, duly assessed against these corporations. On this point the record shows clearly that these amounts were entered upon the assessment rolls of the county as exempt. It is made perfectly plain that the respective amounts, at the different times indicated by the rolls, were marked "Exempt" on the rolls, and that the county authorities, the tax assessor, and the board of supervisors, and the tax collector, never had the remotest idea of dealing with these various sums as taxable properties. The entries on the assessment rolls of the amounts, with the full statement following that they were exempt under the law, or the constitution, as claimed, show indisputably that the intent was, not to assess these corporations with these sums, but to claim the exemption as stated in the entries on the roll. This is too clear for contention. The evidence further shows, without dispute, that these corporations have paid all taxes which have been assessed against them, in all, up to the filing of this bill in October, 1898, about $11,000. The averments of the bill, therefore, that these corporations had never paid any taxes, and that these three amounts, of $75,000 for one extension and addition to the original mill property, and $73,000 for a second extension and addition to the original mill property, and $195,-000, claimed as the cost of the construction of an entire,

separate, distinct, new factory, under the constitutional ordinance, are utterly overthrown.

The allegation with respect to the collusive and fraudulent arrangement is also utterly overthrown. The Stonewall Manufacturing Company is shown by the testimony to have been chartered on April 22, 1870. Its charter expired on April 22, 1895. The Stonewall Cotton Mills was organized April 2, 1895. Prior to its organization, and in the interim between April 2 and April 22, 1895, the Stonewall Cotton Mills became the owner of all the capital stock and property of the Stonewall Manufacturing Company. The stockholders in the Stonewall Manufacturing Company surrendered their certificates of stock and received new certificates of stock in the Stonewall Cotton Mills for like amounts; but the Stonewall Manufacturing Company and the Stonewall Cotton Mills coexisted for only about twenty days, and the claim of exemption for $195,000 on the ground that the Stonewall Cotton Mills erected, after this time, an entirely new factory, was not made or thought of until the Stonewall Manufacturing Company had ceased to exist, on April 22, 1895. So far as the change of name is concerned, the evidence shows that there was no change, in any proper sense of the word, of "name." When the Stonewall Cotton Mill was organized, it was given its present name, Stonewall Cotton Mills, at the suggestion of a Mr. Cawthorn, one of its largest stockholders, in order, as he suggested, that the name might disclose to the world the kind of mills they were, to wit, cotton mills. The name Stonewall Manufacturing Company discloses nothing as to what the nature of the things manufactured was. This is all made as clear as evidence can make anything. This ground for claiming equity jurisdiction, consequently, the proof entirely does away with.

So far as the claim that the chancery court had jurisdiction because there was a lien to be enforced on the property of these corporations, the land, and all that was thereon, is concerned, it

is enough to say that the evidence shows that all this property was assessed and was fully paid on. No lien could be fixed on property on which the taxes were all duly paid, for other taxes that ought to have been assessed and collected, if such taxes there were. There is, therefore, nothing in the claim of a lien conferring jurisdiction. The evidence discloses, so far as the claim of assumption by the Stonewall Cotton Mills of the payment of the taxes on these amounts claimed to be exempt is concerned, that no such assumption of the payment of these taxes was ever made by the Stonewall Cotton Mills. It is shown that the Stonewall Cotton Mills took over all the property of the Stonewall Manufacturing Company, and also that it assumed the payment of all the debts of the Stonewall Manufacturing Company; and if there had been taxes duly assessed against the Stonewall Manufacturing Company, and which, being so duly assessed, constituted liens on the property assessed with such taxes, undoubtedly these duly assessed and unpaid taxes would have been debts of the Stonewall Manufacturing Company, and the assumption by the Stonewall Cotton Mills of all the debts of the Stonewall Manufacturing Company would, in such case, have bound not only the Stonewall Cotton Mills to pay this debt, but would also have bound the property of the Stonewall Manufacturing Company, upon which such taxes would have been a lien. But the trouble here is the utter failure to show by the evidence that any such taxes ever were duly assessed against the Stonewall Manufacturing Company, or its property, on these amounts claimed to be exempt, and hence an utter failure to establish any indebtedness for such taxes on the part of either the Stonewall Manufacturing Company or any part of its property, which the bill alleges to have been assessed, but which the proof shows beyond controversy never was assessed or intended to be assessed.

In other words, to sum up the whole matter, every single ground of equity jurisdiction averred in the bill is, by the proof, utterly overthrown, and the bill, on the proof in this

record, stands before us as a naked attempt to secure a personal decree against the Stonewall Cotton Mills (the Stonewall Manufacturing Company having been gotten out of the litigation) for the amount of certain taxes claimed to be due, when the evidence overwhelmingly shows that no such taxes ever were assessed against either of these corporations, or any of the property in dispute claimed to have been exempt. In short, it is nothing more or less, logically, than an action of assumpsit in the chancery court. It is too plain for argument, on the case now made plain by the testimony, that the chancery court was without jurisdiction in this cause.

In order that there may be no misconception, we desire to say emphatically that we decide nothing as to the following propositions: (1) As to the claim that the $75,000, amount of the first alleged extension and addition, shall be exempt for ten years, from 1883 to 1893, under laws 1882, ch. 49, p. 84. (2) As to the claim that $73,000, the amount of the second alleged extension, under the same act, was exempt. (3) As to whether, in either of these two alleged extensions and additions, the true amount of what could properly be called an extension did not equal $50,000. (4) As to whether there could be, under the act of 1882, more than one extension. (5) As to whether the alleged new and distinct factory, costing $195,000, can be held to be a permanent factory established after the adoption of the exemption ordinance of the constitution of 1890. (6) Whether such alleged factory, if not a permanent factory established after November 1, 1890, within the meaning of the constitutional ordinance, can be properly held to be an extension and addition to such factory under laws of 1896, ch. 54, p. 67.

As to any and all of these claims, we repeat, we decide absolutely nothing, and leave them all open, that such action, if any, as may be deemed proper by the parties concerned, may be taken in the future. We have gone most thoroughly and

carefully through the entire record, and through all these ques-
tions; but, since the chancery court was clearly without juris-
diction to entertain this bill at all, it would be improper for us
to express any opinion as to these various contentions between
the parties until they shall be presented to us by proper pro-
ceedings in due course of law.

We add one or two observations, which shed some collateral
light on this controversy. In 1898 the appellant caused these
two corporations to be assessed for back taxes·on their capital
stock; but subsequently, ·concluding that the entries on the
assessment rolls of these amounts, $75,000, $73,000, and $195,-
000, were intended as assessments on these amounts, notwith-
standing the face of the roll showed they were claimed to be
exempt, he failed to · appeal from an order of the board of
supervisors of Clarke county disallowing these assessments for
back taxes. Afterwards he brought suit at law against both
these corporations; but, concluding that he had no adequate
remedy at law to enforce a lien for these taxes and collect the
same, he abandoned the lawsuits and filed this bill. It is
obvious that, in failing to appeal from the order of the board
of supervisors and in dismissing his suits at law, the appellant
proceeded upon the theory that there had been a valid legal
assessment of these sums which we have named. In this, as
we have shown, he was clearly in error. The proper course
at the time was to have appealed from the order of the board
of supervisors. We decline, in view of the entire want of
jurisdiction in the chancery court to deal with this matter,
which is all that is before us for judgment, to intimate any
opinion whatever as to whether this corporation, the Stonewall
Cotton Mills, can be held for any of these taxes, and, if so,
as to what the remedy may be. We are not concerned, in this
case, with these inquiries.

*For the reason, therefore, that the court below was entirely
without jurisdiction to entertain this bill, the decree of the
court below is affirmed.*