SAMUEL J. HOLLIS & others, trustees, *vs.* CITY OF LYNN.
EDWIN A. CLARK & others, trustees, *vs.* SAME.
MARCIA E. PARSONS *vs.* SAME.

Essex.   November 15, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Tax*, Abatement.  *Practice, Civil*, Petition for abatement of tax: commissioner's
report; Findings by judge; Exceptions.  *Evidence*, Commissioner's report,
Presumptions and burden of proof.

At the hearing in the Superior Court of a petition under St. 1909, c. 490, Part I,
§ 77, for the abatement of a tax, the only evidence was the report of a commis-
sioner, appointed under § 79 of the statute, which did not include a report of
evidence before the commissioner and which was introduced in evidence without
objection.  The report included findings that the assessors, in making the
assessment objected to, were improperly influenced by political events attending
their election and also findings as to the location and character of the land and
the income derived from it, as well as to sales of land in the vicinity and as to the
fair cash value of the land at the time the assessment was made, which showed
an overvaluation by the assessors.  The judge ruled that the finding of the
commissioner as to the assessors being improperly influenced in their action by
events connected with their election was incompetent and irrelevant as to the
matter at issue in the proceeding and that he did not.consider it, and found the
fair cash value of the land to be as reported by the commissioner and ordered an
abatement accordingly.  Upon exceptions by the respondent, it was *held*, that
   (1) It could not be ruled as a matter of law that, the commissioner's findings
as to the assessors being improperly influenced by events connected with their
election being disregarded by the judge, the petitioner had not sustained the
burden of proof;
   (2) The finding of the judge, being based on the findings of the commissioner
as to fair value, could not be set aside as a matter of law;
   (3) The report of the commissioner having been admitted without objection,
the question of the admissibility of his findings as to the assessors being improp-
erly influenced by events connected with their election was not open upon the
respondent's exceptions.

THREE PETITIONS, filed in the Superior Court on April 7, 1919,
appealing under the provisions of St. 1919, c. 490, Part I, § 77,
from a refusal of the assessors of the city of Lynn to abate taxes
assessed upon the land of the petitioners for the year 1918.

A commissioner was appointed under § 79 of the statute.  In
his report in each case, the commissioner, after describing the

location and character of the property to which the petition related and stating the amount of the increase in the assessment in 1918 over that in 1917, the figures of net income for the two years and the details as to the growth in population and other material changes in the city affecting the property, reported as follows:

"In the spring of 1918 the real estate market in Lynn was poor. There was real estate for sale but no customers. Money and loans on real estate were difficult to obtain and cost of maintenance was high. No sales were made except at a very low price. This condition was temporary but it affected the fair cash value of the appellants' land at the time.

"In January, 1918, the present board of assessors in Lynn was elected. Before their election the newly elected mayor went to the board of assessors, then consisting of Story, Newhall and Bennett, and told them that he had made pre-election speeches promising a lower tax rate and that the only ways in which the tax rate could be lowered were to find more property or increase valuations; that assessed values were higher in other cities, and the assessors must help him make good.

"Later the assessors were called before a conference of the mayor and city council and given to understand that their re-election depended on their willingness to raise values in the business section of the city. I find that Story and Bennett agreed to raise valuations. Story and Bennett were re-elected and John F. Manning was elected in place of Newhall.

"The chairman of the board testified that the increase in valuation of land in the mercantile district of Lynn in 1918 was not made for any special reason but that the board had been studying property in the central part of the city for three or four months and they thought the time had arrived when they should increase the valuation.

"I find that they were improperly influenced by the aforesaid events connected with their election in making the increase in valuations over the valuation of 1917 which is above stated.

"I find that before making said valuation of 1918 the assessors either visited or communicated with other cities, including Springfield, Worcester, Holyoke and Haverhill and learned what valuations were placed on business property in those cities, and that

they were improperly influenced in making these valuations of the appellants' property in 1918 by the information so obtained.

"I find that in making said valuation they fixed a value of $25 a square foot on the land at the corner of Union Street and Central Square, which is admitted to be the most valuable land in Lynn, and determined the value of the appellants' and other land by 'radiating' in different directions from that corner, reducing value according to distance, giving such attention to traffic, location and general conditions as they thought circumstances warranted."

After finding that there were sales in the vicinity which furnished a test of the value of the petitioner's land in each case, the commissioner further reported:

"I find that the assessors were either ignorant of or disregarded all of said sales and that they gave no consideration to or had no knowledge of the income which the appellants' property produced.

"I find that there had been no change in value of property or in general conditions in Lynn which would justify the valuation which the assessors made of said land, and that the evidence of the sales made in the vicinity and the income which the property can be made to produce do not justify said valuation."

In the first case, the commissioner found that the fair cash value of the land on April 1, 1918, was $24,930, that the assessors had overvalued it by $16,570 and that the petitioners were entitled to an abatement in the sum of $361.22.

In the second case, the commissioner found that the fair cash value of the land on April 1, 1918, was $44,172, that the assessors had overvalued it by $21,528, and that the petitioners were entitled to an abatement of $469.31.

In the third case, the commissioner found that the fair cash value of the land was $24,757, that the assessors had overvalued it by $11,993, and that the petitioner was entitled to an abatement of $261.44.

The petitions were heard by *McLaughlin, J.* The report of the commissioner was introduced in evidence without objection and was the only evidence. The respondent asked for the following findings and rulings, among others:

"3. As a matter of law the petitioner has not sustained the burden of proving that the fair cash values of the parcels of land

in question on April 1, 1918, were the amounts found by the commissioner.

"4. As a matter of fact the fair cash values of the parcels of land in question on April 1, 1918, were not the amounts found by the commissioner.

"5. As a matter of law the petitioner has not sustained the burden of proving that the assessors' valuations of the parcels of land in question on April 1, 1918, were in excess of the fair cash valuations thereof.

"6. As a matter of fact the assessors' valuations of the parcels of land in question on April 1, 1918, were not in excess of the fair cash valuations thereof.

"7. The commissioner's findings of the fair cash valuation of the parcels of land on April 1, 1918, are largely and to an indefinite and indeterminate extent based upon his finding that the assessors were improperly influenced by events connected with their election referred to in his report in making their aforesaid valuations."

"10. Inasmuch as the commissioner's report does not disclose the extent to which his valuation is affected by incompetent and improper considerations, the petitioners failed to sustain the burden of proof and judgment should be entered for the respondent."

The judge refused these requests, stating in substance that the methods of the assessors, and the motives which actuated them in determining the amounts of their assessment, and the finding of the commissioner, in substance, that these officials were derelict in the performance of their sworn duty, "were irrelevant to the issues involved in this proceeding. The petitioners are seeking, not to invalidate the assessments, nor to recover taxes illegally assessed, but, because the taxes are alleged to be excessive, to have them abated and reduced. The petition itself postulates the legality of the assessments. No motion, however, was ever made to discharge the report, or to recommit it, or to strike out any portion of it as erroneous or injurious, nor was any objection made to the introduction of the report in evidence. The objection to these matters was taken for the first time at the trial, and this is not a reason for rejecting the whole report. As the respondent, however, would have had the right, had the case been tried to a jury, to an instruction that such irrelevant matters be disregarded, so, in coming

to my decision, I have disregarded them. Furthermore, I do not infer that these facts so biased the mind of the commissioner that he could not fairly and justly and from proper sources form his own independent opinion of the value of the property. In view of these considerations, I adopt his findings as to the fair cash value of the land."

The respondent excepted in each case to the refusal of the requests above quoted and "to the manner in which the court dealt with the commissioner's finding 'that the assessors were improperly influenced by events connected with their election.'"

*B. B. Jones,* (*E. C. Jacobs* with him,) for the respondent.

*S. H. Hollis,* for the petitioners.

BRALEY, J. The petitioners are taxpayers in the defendant city, and having applied to the assessors for an abatement of taxes levied in 1918 on their respective lands, which was refused, they appealed under St. 1909, c. 490, Part I, § 77, to the Superior Court where under § 79, the cases were referred to a commissioner "to hear the parties and report the facts, together with such portions of the evidence as either party may request." Upon the coming in of the report, a trial was had to the court sitting without a jury, and, the petitioners having prevailed, the cases are here on the respondent's exceptions to the refusal of the judge to give the third, fourth, fifth, sixth, seventh and tenth requests, and to the manner in which he dealt with the commissioner's finding "that the assessors were improperly influenced by events connected with their election." The evidence upon which the commissioner rested his findings is not reported, and, his report having been admitted in evidence without any objection by the respondent, is made by statute "*prima facie* evidence of the facts therein found." *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257. It being the only evidence, the question is whether the report warranted the judge in finding the valuations to have been excessive and that the petitioners were severally entitled to an abatement as found by the commissioner.

Independently of the commissioner's finding that the assessors were improperly influenced in making the increase in valuation over the valuation of the previous year by certain political events connected with their election, which finding the judge expressly disregarded, there is an explicit finding of fair cash value, which

cannot be set aside as matter of law. *National Bank of Commerce v. New Bedford, supra.* The excess over the fair cash value also appears to have been found as a fact quite apart from any question of motive actuating the assessors. And there is no evidence warranting a finding by the judge, that the fair cash value of the parcels of land in question, or the excess of the fair cash value, differed from the amounts stated by the commissioner. It is contended by the respondent, that the commissioner's conclusions must have been largely and to an indeterminate degree based upon his previous finding that the assessors were subjected to political influence, and as the report does not disclose the weight which he gave to this evidence, the petitioners have failed to sustain the burden of proof. But these objections are insufficient to overcome the probative effect of the report. *Page v. Melrose,* 186 Mass. 361. *Atlantic Maritime Co. v. Gloucester,* 214 Mass. 348. It was proper for the judge to draw inference from the statements in the report which he deemed relevant and admissible. *Beers v. Wardwell,* 198 Mass. 236. And his findings in the absence of any error of law are conclusive. *American Malting Co. v. Souther Brewing Co.* 194 Mass. 89.

The respondent also cannot justly complain of the ruling, that the commissioner's findings of political influence were irrelevant because the validity of the assessments were not in issue. The entire report as we have said had been admitted without objection, and, without passing upon the question of admissibility, it is settled that where evidence otherwise inadmissible goes in without objection the question of admissibility is not open. The party claiming to be aggrieved must either except, or move that the testimony alleged to be incompetent should be stricken out. *Walkup v. Pickering,* 176 Mass. 174. *Jaquith v. Morrill,* 204 Mass. 181, 189. See *Bradford v. Eastman,* 229 Mass. 499, 501.

The respondent for the reasons stated having failed to show reversible error the exceptions in each case should be overruled.

*So ordered.*