Marshall, C. J.
 

 This controversy originally involved the legal question as to the proper place for listing and assessing the property of the Union Mortgage Company for taxation. The Union Mortgage Company is an Ohio corporation, and its original articles of incorporation designated
 
 *659
 
 the city of Cleveland, Cuyahoga county, Ohio, as its principal place of business, and later, by amendment, designated Mentor special school district, in Lake county, as its principal place of business. It claims to be engaged in the business of lending money upon mortgage security, in buying and selling real estate securities, and in carrying out similar purposes, and apparently transacted all of the business in the city of Cleveland. After the amendment of its articles of incorporation, it listed its furniture and fixtures with the auditor of Cuyahoga county at the value of $4,500, and filed a tax return of all of its credits and intangibles, amounting to many millions of dollars, in Mentor special school district in Lake county. Thereupon the auditor of Cuyahoga county assessed all of the property of the company, both tangible and intangible, in the taxing district of Cleveland, as a bank, and fixed the value of its shares of capital stock for the year 1923 at $7,340,000. Thereupon the mortgage company sought a review of the order of the auditor of Cuyahoga county before the state tax commission, and that review involves the question of the domicile of the company for taxation of its moneys, credits, investments, and other intangibles; the question whether the same should be taxed under the provisions of the law applicable to banking corporations; the question of discrimination against the Union Mortgage Company in favor of other corporations similarly constituted and situated; the question of the gross overvaluation of the taxable property of the Union Mortgage Company —all of which questions involve a determination
 
 *660
 
 of the validity, applicability, and constitutionality of many sections of the General Code of Ohio.
 

 The state tax commission decided that the intangible property should be assessed and taxed in Lake county. Thereupon the prosecuting attorney of Cuyahoga county sought a review of the order of the tax commission in the court of common pleas of Cuyahoga county, under authority of Section 5611-2, General Code. That section provides :
 

 “The proceeding to obtain such reversal, vacation, or modification shall be by petition in error filed in the court of common pleas, instituted by the person or persons in whose name the property is listed for taxation, or by any person or official authorized to file a complaint against any valuation or assessment under the provisions of Section 5609 of the General Code.”
 

 Section 5609, General Code, includes the prosecuting attorney in the list of those authorized to file complaints, and apparently therefore the prosecuting attorney is given express authority to prosecute the review in the instant case.
 

 The proceeding was heard in the court of common pleas, and that court affirmed the order of the commission. Thereupon the prosecuting attorney prosecuted error to the Court of Appeals of Cuyahoga county, but before the case was heard in that court a motion to dismiss was sustained on the ground that it had no jurisdiction. The real ground of the dismissal was that the court of common pleas had no jurisdiction of the subject-matter of the action, and that Section 5611-
 
 2,
 
 General Code, which attempts to confer jurisdic
 
 *661
 
 tion upon the court of common pleas on error from the state tax commission, is unconstitutional.
 

 Thereupon error was prosecuted by the prosecuting attorney to this court as a matter of right, on the ground that the controversy arises under the Constitution, involving as it does the constitutionality of Section 5611-2, General Code. Inasmuch as the only question which was decided by the . Court of Appeals involved a dismissal of the action and the constitutionality of that section, that is the only question which will be determined. The detailed facts of the controversy have been, stated in order that it may appear whether or not this case is one involving the exercise of judicial power.
 

 It is claimed that Section 5611-2 is unconstitutional and void, being in contravention of Sections 1 and 4, Article IV, of the Constitution of the state of Ohio. Section 1 provides:
 

 “The judicial power of the state is vested in a Supreme Court, Courts of Appeals, courts of common pleas, courts of probate, and such other courts inferior to the courts of appeals as may from time to time be established by law.”
 

 Section 4 provides:
 

 “The jurisdiction of the courts of common pleas, j and of the judges thereof, shall be fixed by law. ’ ’
 
 \
 

 It is contended by the prosecuting attorney that the Legislature has unlimited power to confer jurisdiction upon courts of common pleas, and, that any jurisdiction thus conferred on any subject must be valid and constitutional. Counsel for the mortgage company insist that the power conferred upon the Legislature by Section 4 is
 
 *662
 
 limited by Section 1, which provides that “judicial power” is vested in the courts named in that section.
 

 At the very outset, therefore, we are confronted with the question of the division of government into separate branches. The Constitutions of some of the states of the Union contain the express declaration that the government must be divided into three separate and distinct branches. Neither the Constitution of the United States nor the Constitution of the state of Ohio contains such express provision, and yet by separate articles of those Constitutions the three separate and distinct powers are conferred upon three separate and distinct governmental agencies. It was of course originally designed that this separation of powers should be observed, and there has no doubt been an effort to carry out this plan, because of the mutual checks and balances thereby guaranteed, but the subject has been found to be one of the utmost difficulty. This difficulty has been well expressed by Davis, J., in
 
 Village of Fairview
 
 v.
 
 Giffee,
 
 73 Ohio St., 183, 76 N. E., 865. At page 186 of the opinion (73 Ohio St., [76 N. E., 866]) we find the following:
 

 “The foundation of the argument against the constitutionality of this act is laid upon the doctrine of the distribution of governmental powers and functions. It seems to be assumed that the separation of executive, legislative, and judicial powers is complete and distinct under the Constitution. Theoretically it is so; but in practice it is not so and never was so; and by the best modern writers of political science it is recognized to be
 
 *663
 
 practically impossible to distinctly define the line of demarcation between the different departments of government.”
 

 Judge Davis then quotes from
 
 G. & D. Taylor & Co.
 
 v.
 
 Place, 4
 
 R. I., 324, 332, and from the opinion of White, J., in
 
 State ex rel.
 
 v.
 
 Harmon,
 
 31 Ohio St., 250. Quoting from the latter case he states:
 

 “ ‘In so far as the distribution has not been made in the Constitution, the power to make it is vested in the General Assembly, as the depository of the legislative power of the state.’ ”
 

 The necessity for maintaining the division of the powers of government into its separate branches was discussed in
 
 Prentis
 
 v.
 
 Atlantic Coast Line Co.,
 
 211 U. S., 210, 225, 29 S. Ct., 67, 69 (53 L. Ed., 150), wherein Mr. Justice Holmes made the following observation:
 

 “We shall assume that when, as here, a state Constitution sees fit to unite legislative and judicial powers in a single hand, there is nothing to hinder so far as the Constitution of the United States is concerned.”
 

 It would seem that when the Constitution does', not clearly define the separate powers, thereby leaving it to one or the other branch of the government to determine to which department certain powers shall belong, the legislative branch should be the one to make the final determination.
 

 In the instant case we are at the parting of ) the ways. Clearly, from the foregoing statement | of the facts which were before the tax commission, j that body had the determination of questions which ! are of judicial nature. Such matters may not > under any circumstances be left to the final deter
 
 *664
 
 mination of an administrative board. We are therefore confronted by the alternative either to declare the Legislature had no power to confer such functions upon the tax commission, or to recognize the right of the Legislature to provide an appeal from that board to the court of common pleas. In the fifth edition of Storey on the Constitution, Yol. 1, at pages 393 and 395, we find a discussion which is pertinent, wherein it is stated that the separate powers of the government are not required to be kept entirely separate and distinct, in the sense that there must be no common link of connection or dependence, but rather that the “whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments.” If no appeal is permissible, then the whole power over this controversy, which is judicial in its nature, will be reposed in an administrative board.
 

 If the broad claims of counsel for the mortgage company, that there can be no judicial review of the proceedings of an administrative board or other tribunal, board, or officer not authorized to exercise judicial functions, should be sustained, the far-reaching effect of such a decision is instantly apparent. If in this case it should be held that the court of common pleas cannot entertain a proceeding to review the action of the tax commission, on the ground that Section 5611-2 is unconstitutional and wholly void, by the same token many other sections of the General Code, which provide an appeal to the court of common pleas from administrative officers holding office by ap
 
 *665
 
 pointment, would likewise be brought in question. As example, it may be pointed out that many sections of the Code provide for an appeal to the court of common pleas from specific orders of the county commissioners in road and ditch cases, and Section 2461 confers upon the court of common pleas appellate jurisdiction from any order of the county commissioners. Section 1327 provides an appeal to the court of common pleas from the state dental board; Section 1089-8, from the secretary of agriculture; Section 1343-4, from the embalming examiner; Section 843-17, from the state fire marshal; Section 7214, from township trustees; and Section 8572-79, from the county recorder. Some of these officials are elected by the people and others hold office by appointment. Other sections of the Code provide for appeals to the court of common pleas, from both elective and appointive officers. Section 1465-90 provides for an appeal from the Industrial Commission. F,or many years such appeals have been prosecuted, and many of them have been carried on error to this court and finally disposed of in this court without question being made as .to the right to prosecute such appeal. In 1925 (111 Ohio Laws, p. 227) further amendments were made in Section 1465-90, but the right of review of the record made in the Industrial Commission is still fully provided and frequently exercised. Many of these rights would be swept into the discard if the right of appeal is denied in the instant case. The power of the court of common pleas would by the same token be strictly limited to judicial matters, and the power of appointment, conferred upon the court of
 
 *666
 
 common pleas by many sections of the Code, which power is clearly executive in its nature, would necessarily fall. Among the powers of appointment conferred upon the common pleas court of officers having no relation to court procedure and court functions the following are outstanding: Section 6886-1 provides for appointment of a commission to act with the county commissioners in the improvement of highways. Section 2976-11 provides for the appointment of county library trustees. Section 4014 provides for appointment of trustees of a library sinking fund. Section 2333 provides for a commission to act in conjunction with the county commissioners as a building commission in the erection of a courthouse or other county building where the cost exceeds $25,000.
 

 It is claimed that appeals from county commissioners and other officers elected by the people, exercising judicial functions conferred upon them by legislation, are in a different class from officials holding office by appointment, for the reason that Section 10, Article IV, of the Constitution, provides that judges shall be elected by the people, and the Legislature having the power, under Section 1 of Article IV, to create other courts inferior to the Court of Appeals, the fact of conferring judicial functions upon any elected officer to that extent constitutes such officer a court. A number of cases have been decided by this court based upon those statutes, and these cases will be hereafter noticed.
 

 There can be no question of the power of the industrial commission in the first instance to hear and decide controversies, because Section 35, Arti
 
 *667
 
 ele II, of the Constitution, provides that laws may he passed establishing such a board, with power to collect, administer, and distribute a fund “and to determine all rights of claimants thereto.” No constitutional provision gives the right of an appeal from that board to the court of common pleas, but, on the contrary, Section '2, Article IV, specifically confers upon the Supreme Court “such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law.” The Legislature has never acted upon this latter power, and no such jurisdiction has ever been conferred by law upon the Supreme Court, but on the contrary an appeal has been provided from the industrial commission to the court of common pleas. Section 1465-90, General Code.
 

 The tax commission stands in a situation even more isolated. The Constitution does not provide for a tax commission. The law which creates a tax commission does not in general terms define its powers. There are, however, many sections of the Code which confer powers and duties upon that board. The commission is composed of members who hold office by appointment. The usefulness of the commission has been fully demonstrated by experience. This court has several times had occasion to review orders of the tax commission, but in each instance the record which was reviewed was found to be a controversy involving property rights and the determination of the validity and applicability of statutes to the facts and circumstances of the controversy. In
 
 Floyd, County Auditor,
 
 v.
 
 Manufacturers’ Light & Heat Co.,
 
 111 Ohio St., 57, 114 N. E., 703, the opinion contains
 
 *668
 
 a discussion of the superior facilities and the valuable experience of the tax commission in disposing of questions of taxation, and it is not doubted that the expert knowledge acquired by the commission, and the intensive study it is able to give to questions of taxation, by reason of the frequent recurrence of such questions in the commission, result in a uniform and an efficient administration of matters of taxation which could not be attained by having those questions submitted to the various courts of common pleas of the state.
 

 In the case of
 
 Floyd
 
 v.
 
 Manufacturers' Light & Heat Co., supra,
 
 this court declared the appeal
 
 ¡to
 
 the court of common pleas to be an error proceeding. A different view was taken by the Dis-j trict Court of the United States for the Southern District of Ohio, in a case pending in that court, land it is the contention of counsel for the mortgage company in the instant case that the remedy for error of law in the tax commission is an independent suit, under and by virtue of Section 12075, General Code. This contention must be held to be purely technical. If the Legislature can confer power upon the common pleas court to review the action of the tax commission in an independent suit by way of a collateral attack thereon, no reason is perceived why the Legislature may not confer upon the same court the power to review the same record in a direct attack by the procedure of a petition in error. If officers intrusted with the power to appraise property and levy and collect taxes proceed in an unlawful manner, resulting in damage to owners of lands and
 
 *669
 
 goods, it must be within the power of the Legislature, under Section 16 of the Ohio Bill of Rights, to provide that such invalidity in tax proceedings may be reviewed in the courts, either in appellate proceedings or in an original action. In its last analysis it is a question of legislative power, It must be conceded that the tax commission could not be invested with final jurisdiction to determine matters of judicial cognizance, and it would seem that the Legislature might have a choice of means in providing the machinery whereby its proceedings which involve judicial discretion and judgment may be reviewed by the courts.
 

 The legislative problem is more than a mere I choice of means, where a choice might be made; between two remedies equally efficient. The Legis- i lature has also the duty of determining which of *; the two remedies is the more efficient. If an orderp of the tax commission should be attacked under '• Section 12075, General Code, the court could do no more than enjoin further proceedings. A review of the proceeding before the tax commission, under authority of Section 5611-2, permits the order to be modified, and even permits the court to enter such final judgment as in the opinion of the court the tax commission should have entered.
 

 Whether a denial of an appeal from an order of the commission, where a legal controversy is involved, would be a denial of due process, has not been discussed by counsel in the case, but there should perhaps be some mention of that subject. Section 16 of the Ohio Bill of Rights provides:
 

 “All courts shall be open, and every person, for
 
 *670
 
 an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
 

 The instant case involves a question of taxation, and the Supreme Court of the United States, in construing the due-process clause of the Fourteenth Federal Amendment, has repeatedly held that in matters of taxation due process is not necessarily judicial process. This subject has been discussed in
 
 McMillen
 
 v.
 
 Anderson,
 
 95 U. S., 37, 24 L. Ed., 335;
 
 State Railroad Tax Cases,
 
 92 U. S., 575, 610, 23 L. Ed., 663;
 
 Hagar
 
 v.
 
 Reclamation Dist. No. 108,
 
 111 U. S., 701, 4 S. Ct., 663, 28 L. Ed., 569;
 
 Davidson
 
 v.
 
 New Orleans,
 
 96 U. S., 97, 107, 24 L. Ed., 616; and
 
 Kentucky Railroad Tax Cases,
 
 115 U. S., 321, 6 S. Ct., 57, 29 L. Ed., 414.
 

 In the case last referred to, Mr. Justice Matthews has discussed the cases theretofore decided, herein referred to, and points out the different kinds of exercise of taxing power, and quotes with approval the opinion of Mr. Justice Bradley in
 
 Davidson
 
 v.
 
 New Orleans, supra,
 
 to the effect that, if the exercise of the taxing powers in a given case is suitable or admissible, it will be adjudged to be due process of law, but, if found to be arbitrary, oppressive, and unjust, it may be declared not to be due process of law. The power of taxation is concededly a legislative function. This has been declared so often by the courts of this and other states that it is unnecessary to cite authorities. It is equally well-settled that the levy of taxes, and the valuation of property for the purpose of tax levies, are ministerial and ad
 
 *671
 
 ministrative in character.
 
 Palmer
 
 v.
 
 McMahon,
 
 133 U. S., 660, 10 S. Ct., 324, 33 L. Ed., 772;
 
 Upshur County
 
 v.
 
 Rich,
 
 135 U. S., 467, 10 S. Ct., 651, 34 L. Ed., 196. The provision of the Ohio Bill of Bights, above quoted, is much broader than the due process clause of the Fourteenth Federal Amendment, and, whatever the character attributed to the act of fixing valuations and levying taxes, and the finality of same when reposed in administrative boards and officers, by the earlier federal decisions, when construed in the light of the decision of Mr. Justice Matthews in
 
 Kentucky Railroad Tax cases, supra,
 
 we must conclude that any arbitrary, oppressive, or unjust act on the part of the taxing authorities gives ground for judicial review. Surely the Legislature is within its constitutional rights in declaring that an injury may be done to a person in his lands and goods by taxation proceedings, for which a remedy may be lawfully provided by opening the doors of courts of general jurisdiction.
 

 This controversy must in the last analysis turn upon a definition of “judicial power.”
 

 Scores of cases have been decided by the courts of other states, in which judicial power has been variously defined. It would not be profitable to give all these definitions, nor to discuss all the cases, but it may generally be stated as the result of those cases that judicial power is the authority vested in some tribunal to hear and determine the rights of persons or property, or the propriety of doing an act; a power involving the exercise of judgment and discretion in the determination of questions of right in specific cases affecting the
 
 *672
 
 interests of persons or property as distinguished from ministerial power involving no discretion. It includes the power to interpret the Constitution and the laws and to make decrees determining controversies. Again it has been stated that the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto. Applying these definitions to the instant case, it certainly is a matter of judicial cognizance to inquire whether the tax commission has exceeded its statutory functions, or whether it has exercised them in conformity with the machinery provided for its use, and .whether it has properly construed and applied the law ^ applicable to the controversy submitted to it for decision. . .
 

 In the instant case the dismissal of the action by the Court of Appeals raises only the question of the validity of Section 5611-2, General Code. The case cannot, however, be finally disposed of without reference to some other sections, where- , by the proceeding was taken from the county auditor to the tax commission for review. Sections 5610 and 5611 permit a review in the tax commission from orders made by the county auditor, where only ministerial functions were involved. Section 5616 permits a review in the tax commission from a “determination of a county auditor respecting the liability of any property to taxation in that year, or its exemption therefrom.” By every test this must be held to involve matters which are usually classed as of judicial cognizance. Counsel have only argued the right to appeal from the tax commission to the court of common pleas,
 
 *673
 
 and have urged that in this instance there can be no appeal, because the controversy does not involve judicial power, and it is urged that it is not judicial power because the commission cannot lawfully exercise judicial power. This does not help to solve the problem. If the Legislature has in fact conferred upon the tax commission powers which are judicial, and the commission has acted pursuant to the power thus conferred, justice would not be promoted, but rather denied, by leaving judicial matters as determined by the commission and denying an appeal therefrom. Manifestly a denial of an appeal of judicial matters from the order of the tax commission would be a denial of due process, in violation of the Fourteenth Federal Amendment and of Section 16 of the Ohio Bill of Bights.
 

 During the past 20 years there has been a distinct tendency on the part of the federal government, and of the governments of all the states of the Union, to commit the discharge of many governmental functions to administrative boards and commissions, and in almost all of such legislation the legislation creating such commissions provides for the members being appointed by the executive branch of the government. Such commissions are employed in Ohio in three important lines of governmental agency, and in each instance the members are appointed. It will be admitted that strictly and technically such commissions could not be courts, unless, as in the ease of the industrial commission, provision is made in. the Constitution for creating a board “to determine all rights of claimants.” Even that provision con
 
 *674
 
 stitutes no exception, because the Constitution does not authorize the appointment of the members of the board, and therefore constitutes no exception to Section 10, of Article IY, which requires judges to be elected. The question arises whether, in cases where no specific legislative power is conferred by the Constitution in that behalf, a commission can by legislation be lawfully invested with authority to hear and determine controversies which involve the application of statutes and principles of law to proven facts. In view of the prevalence of commissions in Ohio, and the extensive character of the functions performed by them, and the importance of those functions, any declaration of this court at this time, denying the right of a board or commission whose members hold office by appointment to determine matters of a judicial character, would completely disarrange the entire plan of our state government, and some of our most important governmental functions would be brought to a complete standstill until some very comprehensive legislation and public elections could take place.
 

 The Supreme Court of the United States has dealt with this matter in a number of important cases. Without citing or discussing all of them, it is sufficient for the present purpose to refer to a few of them. In the case of
 
 Hodge
 
 v.
 
 Muscatine County, Iowa,
 
 196 U. S., 276, 25 S. Ct., 237, 49 L. Ed., 477, an assessor had levied a tax upon a person, and placed a lien upon his property because of the illegal sale of cigarets. No notice of the assessment was given, but the Supreme Court held that, by reason of an appeal being pro
 
 *675
 
 vided to the District Court for a judicial determination of liability, the requirements of due process had been fully met. Other cases declaring the same doctrine are as follows:
 
 Hurtado
 
 v.
 
 California,
 
 110 U. S., 516, 535, 4 S. Ct., 111, 28 L. Ed., 232;
 
 Murray’s Lessee
 
 v.
 
 Hoboken Land & Improvement Co.,
 
 59 U. S., (18 How.), 272, 15 L. Ed., 372;
 
 Ex parte Wall,
 
 107 U. S., 265, 2 S. Ct., 569, 27 L. Ed., 552;
 
 Hagar
 
 v.
 
 Reclamation List. No. 108,
 
 111 U. S., 701, 4 S. Ct., 663, 28 L. Ed., 569;
 
 Ballard
 
 v.
 
 Hunter,
 
 204 U. S., 241, 27 S. Ct., 781, 51 L. Ed., 1191;
 
 N. Y. Cent. R. Co.
 
 v.
 
 White,
 
 243 U. S., 188, 37 S. Ct., 247, 61 L. Ed., 667, L. R. A., 1917D, 1, Ann. Cas., 1917D, 629;
 
 Hawkins
 
 v.
 
 Bleakly,
 
 243 U. S., 210, 37 S. Ct., 255, 61 L. Ed., 678, Ann. Cas., 1917D, 637;
 
 Mountain Timber Co.
 
 v.
 
 Washington,
 
 243 U. S., 219, 37 S. Ct., 260, 61 L. Ed., 685, Ann. Cas., 1917D, 642;
 
 Middleton
 
 v.
 
 Texas Power & Light Co.,
 
 249 U. S., 152, 39 S. Ct., 227, 63 L. Ed., 527;
 
 Arizona Employers’ Liability Cases,
 
 250 U. S., 400, 39 S. Ct., 553, 63 L. Ed., 1058, 6 A. L. R., 1537;
 
 Bates & Guild Co.
 
 v.
 
 Payne,
 
 194 U. S., 106, 24 S. Ct., 595, 48 L. Ed., 894;
 
 Palmer
 
 v.
 
 McMahon,
 
 133 U. S., 660, 10 S. Ct., 324, 33 L. Ed., 772.
 

 It seems quite certain from the foregoing decisions of the United States Supreme Court that matters usually classed as of judicial cognizance may be submitted for determination to administrative boards and commissions, or other public officials, without violating the requirements of due process, if provision is made for a judicial review.
 

 That parties are entitled to a judicial inquiry into any controversy affecting rights of person or
 
 *676
 
 property has been declared by the United States Supreme Court in
 
 Ohio Utilities Co.
 
 v.
 
 Public Util. Comm, of Ohio,
 
 267 U. S., 359, 45 S. Ct., 259, 69 L. Ed., 656, and
 
 Ohio Valley Water Co.
 
 v.
 
 Ben Avon Borough,
 
 253 U. S., 287, 40 S. Ct., 527, 64 L. Ed., 908.
 

 On the other hand, the United States Supreme Court has repeatedly declared that controversies in matters purely executive in their nature are not required to be reviewed by a judicial tribunal in order to constitute due process.
 

 Having examined all the briefs of counsel and the numerous authorities cited and discussed therein, and having made a comprehensive survey of the entire controversy, we are of the opinion that this case can be disposed of upon the authority _of the former decisions of this court.
 
 I
 
 There has been’ an elaborate discussion in the briefs of statutes which confer the power to hear and decide election contests upon certain courts, and it is urged, on the one side, that this demonstrates the power of courts to hear matters which are not strictly of judicial cognizance. We are of the opinion that such a conclusion does not follow. The power to give such authority to the courts is conferred by a special provision of the Constitution (Section 21 of Article II), which is in addition to the powers conferred in Sections 1 and 4 of Article IV. This has been fully discussed and decided in
 
 Thompson
 
 v.
 
 Bedington,
 
 92 Ohio St., 101, 110 N. E., 652, Ann. Cas., 1918A, 1161, in which this court declared in unmistakable language that the determination of election contests was not the exercise of judicial power, but of a political
 
 *677
 
 power, under authority specially conferred. Those cases are therefore of no value in the present controversy
 

 In
 
 Ex parte Logan Branch of State Bank,
 
 1 Ohio St., 432, it was decided by this court that appeal does not lie from a decision of the auditor of state to the Supreme Court; it being declared that the Supreme Court has such jurisdiction only as is conferred by the Constitution. Unfortunately in that case the judge writing the opinion made the following obiter statement:
 

 “Inasmuch, therefore, as the auditor of state can in no sense be considered as having exercised any judicial function, in the premises, and as we have no idea of an appeal, except from one court to another, this proceeding must be dismissed for want of jurisdiction.”
 

 The cause was necessarily dismissed because the Constitution did not confer jurisdiction upon the court, but the source of the controversy was certainly unimportant.
 

 Another obiter statement directly to the contrary is that found in
 
 Hocking Valley Ry. Co.
 
 v.
 
 Pub. Util. Comm.,
 
 92 Ohio St., 9, 110 N. E., 521, L. R. A., 1918A, 267, Ann. Cas., 1917B, 1154. The obiter statement appears at page 14 (92 Ohio St., [110 N. E., 523]), as follows:
 

 “The Legislature is not required to confine such revisory jurisdiction to this court, but would be authorized by Section 4 of Article IY of the Constitution to confer it on the courts of common pleas.”
 

 Another obiter statement which tends to confusion is found in
 
 State
 
 v.
 
 Guilbert,
 
 56 Ohio St.,
 
 *678
 
 575, 47 N. E., 551, 38 L. R. A., 519, 60 Am. St. Rep., 756. That ease involved the validity of the Torrens registration law, wherein power was conferred upon the county recorder to determine adversary rights of persons in property. It was very properly declared in that case that the recorder could not be invested with judicial powers, but it may be questioned whether that decision was correct, in view of the fact that an appeal was. provided from the action of the recorder. However that may be, at page 629 (56 Ohio St., [47 N. E., 559]) of the opinion, it was stated by Shauck, J.:
 

 “If these are judicial powers, it is admitted that they cannot be vested in the recorder. If they are not judicial, the provisions for an appeal are void, since, as was said by this court in
 
 Logan Branch, Bank, Ex parte,
 
 1 Ohio St., 432, ‘We have no idea of an appeal, except from one court to another.’ ”
 

 Among the many cases which have been decided by this court relative to an appeal from a nonjudicial. officer or board to the court of common pleas, we will discuss only a few. In
 
 Mannix
 
 v.
 
 Commissioners of Hamilton County,
 
 43 Ohio St., 210, 1 N. E., 322, the county commissioners had rejected a claim for refund of taxes erroneously paid. An appeal was recognized by this court, and properly so, because it was a matter of judicial cognizance. In
 
 Bowersox
 
 v.
 
 Commissioners of Seneca County,
 
 20 Ohio St., 496, an order of the commissioners declaring the necessity and propriety of a public improvement involving the appropriation of private property for public use,
 

 
 *679
 
 and assessing the costs of the public improvement upon lands specially benefited, was held not to be áppealable, and we think properly so, because, as declared by the court, the commissioners determined only a political question. In
 
 Commissioners of Belmont County
 
 v.
 
 Ziegelhofer,
 
 38 Ohio St., 523, it was held that, where a claim against a county, founded upon a statute, had been rejected by the county commissioners, the remedy of appeal is not exclusive, but is cumulative merely, and the claimant is entitled to have his action by due course of law in any court of competent jurisdiction. This determination is certainly contrary to
 
 Shepard
 
 v.
 
 Commissioners of Darke County,
 
 8 Ohio St., 354, where it was held that the remedy by appeal was exclusive, and that the claimant might not sue at common law. In
 
 Commissioners
 
 v.
 
 Osborn,
 
 46 Ohio St., 271, 20 N. E., 333, an appeal was denied from the allowance to an attorney for the prosecution of a criminal, the only question in issue being the amount to be allowed, and this was properly held to be an executive function, and the power reposed in the commissioners held to be discretionary and final. In
 
 Southard
 
 v.
 
 Stephens,
 
 27 Ohio St., 649, an order made by the county commissioners in a proceeding to improve a road was properly held not to be a judicial proceeding and therefore n|ot appealable. In
 
 Haff
 
 v.
 
 Fuller,
 
 45 Ohio St., 495, 15 N. E., 479, it was held that the final order of the township trustees, establishing ditches, drains, and water courses, may be reviewed by petition in error and reversed for errors apparent on the record. It would seem, however, that the action of the
 
 *680
 
 trustees in such matters was of a political nature, for which there should be no appeal, and that the proper remedy would have been to enjoin under Section 12075, General Code, for any irregularities, illegal procedure, or fraud, accident, or mistake. It is equally difficult to approve the case of
 
 Lewis
 
 v.
 
 Laylin,
 
 46 Ohio St., 663, 23 N. E., 288, where it was held that the exclusive remedy for defect or irregulárities apparent on proceedings before the county commissioners for improving roads under the two-mile assessment law is by petition in error. That case was decided upon the authority of
 
 Haff
 
 v.
 
 Fuller, supra.
 

 The foregoing cases are for the most part harmonious, and yet it is impossible to reconcile all of them. Whether or not the court of common pleas is exercising judicial power depends, not upon the source of the controversy, but upon its character. The source of the controversy does not in any sense determine its character. If the proceeding involves a ministerial, executive, or political function, no legislative fiat can make it a matter of judicial cognizance, unless the agencies charged with performance of the function proceed an unlawful manner. If, on the other hand, it ^involves a controversy over rights of person or property—that is to say, a matter of judicial cognizance—a court of competent jurisdiction is not deprived of that jurisdiction by the fact of some administrative agency having first made some determination of it. In such event it is not only competent for the Legislature to provide a judicial review, but it is its imperative duty to do so.
 

 
 *681
 
 This subject was discussed by Judge Shauck in.
 
 State
 
 v.
 
 Guilbert, Aud.,
 
 56 Ohio St., 575, at page 627, 47 N. E., 551, 559 (38 L. R. A., 519, 60 Am. St. Rep., 756), as follows:
 

 “It is true that the power to ascertain and decide is not necessarily a judicial power, and it is frequently exercised by ministerial officers and legislative bodies. Whether the power to hear^. and determine is judicial depends upon the nature of the subject of the inquiry, the parties to be affected, and the effect of the determination. While it is not supposed that any definition of judicial power, sufficient for all conceivable cases, has ever been attempted, it is clear that ‘to adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial de-» partment.’ Cooley, Const. Lim., 109.”
 

 In
 
 State
 
 v.
 
 Harmon,
 
 31 Ohio St., 250, it was stated by White, J., at page 259:
 

 “The authority to ascertain facts, and to apply the law to the facts when ascertained, appertains as well to the other departments of the government as to the judiciary. Judgment and discretion are required to be exercised by all the departments.”
 

 The conclusion we have reached upon this record is that by virtue of Section 5616, General Code, certain matters which may be of that character which is usually recognized as of judicial cognizance are reviewable in the tax commission, and such matters must necessarily therefore be appealable to some court, and the. Legislature has not exceeded its powers in giving the right of
 
 *682
 
 ! appeal to the court of general jurisdiction under ■ the power conferred upon the Legislature in that behalf by Section 4, Article IV, of the Constitution.
 

 In
 
 Conover
 
 v.
 
 Gatton,
 
 251 Ill., 587, 96 N. E., 522, it was held:
 

 “An appeal authorized by the Legislature to be taken to a court from the action of a nonjudicial body may be entertained if the state of facts is such that the appellate tribunal would have had original jurisdiction of the controversy in some form of action.”
 

 And again it was held by the same court in
 
 Rowand
 
 v.
 
 Little Vermillion Special Drainage Dist.,
 
 254 Ill., 543, 98 N. E., 969:
 

 “The jurisdiction of a court to hear and determine a matter brought to it by appeal from a nonjudicial body depends upon the nature of the rights involved rather than upon the character of the body from which such appeal is taken.”
 

 As to those matters determined by the commission which are of ministerial, administrative, or executive character, involving matters nonjusticiable, the court is nevertheless bound by the provisions of the statute to entertain an error proceeding, but in such case, if the record discloses . that the commission has not proceeded in an unlawful manner, and that its determination involves only a question of valuation of property, and not the question of the liability of property to tax, or its exemption therefrom, it is the duty of the court to dispose of the error proceeding, upon the long-established rule that the court will not substitute its judgment for that of the commission, and will not disturb its finding where there has been no
 
 *683
 
 abuse of discretion, and where there is no element I of fraud or mistake or of arbitrary or oppressive) conduct on the part of the commission. In such j cases the same rule should apply as this court s has repeatedly applied in error proceedings from ’ the Public Utilities Commission.
 
 Settle
 
 v.
 
 Public Util. Comm.,
 
 94 Ohio St., 417, 419, 114 N. E., 1036;
 
 Akron, C. & Y. R. Co.
 
 v.
 
 Public Util. Comm.,
 
 96 Ohio St., 359, 117 N. E., 314;
 
 Wheeling & Lake Erie R. Co.
 
 v.
 
 Public Util. Comm.,
 
 96 Ohio St., 370, 117 N. E., 317;
 
 Pollitz
 
 v.
 
 Public Util. Comm.,
 
 96 Ohio St., 560, 117 N. E., 149, L. R. A., 1918D, 166.
 

 The right of appeal to the courts from orders of executive officers and administrative boards, under authority conferred by statute, in matters judicial and nonjudicial, has been recognized in the following cases:
 
 Ex parte State ex rel. Smith, Atty. Gen.,
 
 203 Ala., 444, 83 So., 334;
 
 Cochran
 
 v.
 
 State,
 
 206 Ala., 74, 89 So., 278;
 
 Ex parte Ft. Smith & Van Buren Bridge Co.,
 
 62 Ark., 461, 36 S. W., 1060;
 
 Mohave County
 
 v.
 
 Stephens,
 
 17 Ariz., 165, 149 P., 670;
 
 Singer Mfg. Co.
 
 v.
 
 City and County of Denver,
 
 46 Colo., 50, 103 P., 294;
 
 U. S. Envelope Co.
 
 v.
 
 Town of Vernon,
 
 72 Conn., 329, 44 A., 478;
 
 German American Sav. Bank
 
 v.
 
 City of Burlington,
 
 118 Iowa, 84, 91 N. W., 829;
 
 Marion County
 
 v.
 
 Wilson,
 
 105 Ky., 302, 49 S. W., 799, 20 Ky. Law Rep., 1193;
 
 Carr
 
 v.
 
 Louisiana Cent. Lumber Co.,
 
 136 La., 1025, 68 So., 113;
 
 National Bank of Commerce
 
 v.
 
 City of New Bedford,
 
 175 Mass., 257, 56 N. E., 288;
 
 Penobscot Chemical Fiber Co.
 
 v.
 
 Bradley,
 
 99 Me., 263, 59 A., 83; Adams v.
 
 Stonewall Cotton Mills,
 
 89 Miss., 865, 43 So., 65;
 
 In re Bankers’ Life Ins. Co.,
 
 88 Neb., 43, 128 N. W., 661;
 
 *684
 

 Weatherly
 
 v.
 
 Cloworth Development Co.,
 
 63 Okl., 307, 166 P., 156;
 
 Board of Com’rs. of Kingfisher County
 
 v.
 
 Guarantee State Bank,
 
 27 Okl., 736, 117 P., 216;
 
 Smith Securities Co.
 
 v.
 
 Multnomah County,
 
 98 Or., 418, 192 P., 654, 194 P., 428;
 
 In re State Line & Sullivan R. Co.’s. Taxation,
 
 264 Pa., 489, 107 A., 860;
 
 W. Va. Nat. Bank
 
 v.
 
 Spencer,
 
 71
 
 W.
 
 Va., 678, 77 S. E., 269;
 
 In re Appeal of Minneapolis, St. P. & S. Ste. Marie R. Co.,
 
 30 N. D., 221, 152 N. W., 513, Ann. Cas., 1917B, 1205;
 
 Rowand
 
 v.
 
 Little Vermillion Special Drainage Dist.,
 
 254 Ill., 543, 98 N. E., 969;
 
 Landowners
 
 v.
 
 People ex rel. Stookey,
 
 113 Ill., 296;
 
 Thompson
 
 v.
 
 Koch,
 
 98
 
 Ky.,
 
 400, 33 S. W., 96.
 

 The judgment of the Court of Appeals, dismissing the error proceeding from the court of common pleas, will therefore be reversed, and the cause will be remanded to the Court of Appeals, with instructions to hear and decide the assignments of error enumerated in the petition in error.
 

 Judgment reversed, and cause remanded.
 

 Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.
 

 Allen, J., not participating.